IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | |
|---|---|
| KENNETH LAMAR WEST SR, | **Case No**. |
| Plaintiff, | **Jury Trial Demanded** |
| TRANS UNION LLC, EQUIFAX INFORMATION SERVICES, LLC, and SYNCHRONY BANK, | |
| Defendants. | |

## COMPLAINT

Kenneth Lamar West SR ("Plaintiff" or "Mr. West") brings this civil rights action on an individual basis, against Trans Union LLC ("Trans Union"); Equifax Information Services, LLC ("Equifax") (together, Trans Union and Equifax are the "CRA Defendants"); and Synchrony Bank for actual, statutory, and punitive damages and costs, and attorney's fees, for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et. seq.*, arising out of the mixing of Plaintiff's credit file with that of another consumer.

## INTRODUCTION

1.    In 1970, Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA"), requiring consumer reporting agencies ("CRAs") to

implement and utilize reasonable procedures "to assure **maximum possible accuracy**" of the personal, private, and financial information that they compile and sell about individual consumers. 15 U.S.C. § 1681e(b) (emphasis added).

2.      In doing so, Congress recognized that:

> [the] banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

15 U.S.C. § 1681(a)(1).

3.      Accordingly, the FCRA helps ensure that CRAs "exercise their grave responsibilities with fairness, impartiality, and respect for the consumer's right to privacy." *See* 15 U. S.C. § 1681(a)(4). CRAs' procedures must be "reasonable," i.e., "fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of [] information." 15 U.S.C. § 1681(b).

4.      The preservation of one's good name and reputation is at the heart of the FCRA's purposes:

> [W]ith the trend toward computerization of billings and the establishment of all sorts of computerized data banks, the individual is in great danger of having his life and character reduced to impersonal "blips" and key-punch holes in a stolid and unthinking machine which can literally ruin his reputation without cause, and make him unemployable or uninsurable, as well as deny him the opportunity to obtain a mortgage or buy a home. We are not nearly as much concerned over the possible mistaken turn-down of a consumer for a luxury item as we are over the possible destruction of his good name

without his knowledge and without reason. Shakespeare said, the loss
of one's good name is beyond price and makes one poor indeed.
*Bryant v. TRW, Inc.*, 689 F.2d 72, 79 (6th Cir. 1982) (quoting 116 Cong. Rec.

36570 (1970)).

5.      As society's "trend toward computerization" intensifies, the FCRA's

relevance has only grown.  In 2024, a unanimous Supreme Court—discussing the

"importance of accuracy in credit reporting"—agreed that, today, "[a] credit report

can determine everything from whether a person can secure a credit card, purchase

a home, win a new job, or start a small business." *Department of Agriculture Rural*

*Development Rural Housing Service v. Kirtz*, 601 U.S. ___ (2024). The FCRA is

meant to ensure that such consumers are given a fair shake, but *Kirtz* cited findings

that "over 34% of consumers [] were able to identify at least one error in their credit

reports." *Id.* The Court agreed that "[m]istakes like these can lead lenders to insist

on higher interest rates or other terms that make it difficult or impossible for

consumers to obtain a mortgage, auto loan, student loan, or other credit." *Id.* (internal

quotations omitted).

6.      In 2022, a bipartisan congressional subcommittee called on the CFPB

to investigate "longstanding problems with the practices employed by the [CRAs]

in responding to consumers who challenge credit reporting errors"—opining that

"consumers are experiencing no small measure of stress, frustration, and financial

hardship as a result of the [CRAs'] failure to correct legitimate errors on their credit reports." *Letter to the Honorable Rohit Chopra*, House Select Subcommittee on the Coronavirus Crisis, 117th Congress (October 13, 2022).

7.     A particular cause of frustration and financial hardship for consumers, for many decades, has been the issue of Mixed Files. *See, e.g., Thompson v. San Antonia Retail Merchants Ass'n*, 682 F.2d 509, 511 (5th Cir. 1982). A Mixed File is a credit file that refers to a consumer report in which some or all of the information pertains to persons other than the person who is subject to that consumer report. *See F.T.C. v. TRW, Inc.*, 784 F. Supp. 361, 362 (N.D. Tex. 1991).

8.     More recently, the CRA Defendants have been the subject of numerous state attorney general actions relating to their mixed file problem. *See, e.g., In the Matter of Eric T. Schneiderman, Attorney General of the State of New York v. Experian Information Solutions, Inc.; Equifax Information Services, LLC; and Trans Union LLC*.[1]

9.     Consumers submit hundreds of thousands of CFPB complaints per year regarding the CRA Defendants.  *See* Consumer Complaint Database, Consumer

---

[1] https://ag.ny.gov/press-release/2015-ag-schneiderman-announces-groundbreaking-consumer-protection-settlement-three Last visited May 17, 2022; *see also* https://ag-ny.gov/pdfs/CRA%20Agreement%20Fully%20Executed%203.8.15.pdf Last visited May 17, 2022.

Financial Protection Bureau, https://www.consumerfinance.gov/data-research/consumer-complaints/search. Similarly, thousands of consumers have complained about credit reporting issues in which Synchrony Bank is at fault. *Id.* Upon information and belief, the allegations underlying a significant portion of these complaints are similar to the allegations underlying this Action.

10. The CRA Defendants have been the subject of many thousands of meritorious private FCRA lawsuits, with some resulting in multimillion-dollar verdicts, for mixing consumers' files. A few examples:

    (a)    In 2002, the jury in *Judy Thomas v. Trans Union LLC*, District of Oregon, Case NO. 00-1150-JE, found Trans Union had willfully violated the FCRA by mixing Judy Thomas's personal and credit information with another consumer's and failing to unmix them despite Ms. Thomas' numerous disputes. The jury awarded Ms. Thomas $300,000.00 in actual damages and $5,000,000.00 in punitive damages.

    (b)    In 2007, the jury in *Angela Williams v. Equifax Information Services, LLC*, Circuit Court for Orange County Florida, Case No. 48-2003-CA-9035-0, awarded Angela Williams $219,000.00 in actual damages and $2,700,000.00 in punitive damages for willfully

violating the FCRA by mixing Angela Williams with another consumer and failing to unmix them despite Ms. Williams' disputes.

(c)     In 2013, the jury in *Julie Miller v. Equifax Information Services, LLC*, District of Oregon, Case No. 3:11-cv-01231-BR, awarded Julie Miller $180,000.00 in actual damages and more than $18,000,000.00 in punitive damages for willfully violating the FCRA by mixing Julie Miller with another consumer and failing to unmix them despite Ms. Miller' numerous disputes.

(d)     More recently, a jury assessed a $60 million dollar verdict against Trans Union for mixing innocent persons as terrorists and drug dealers by matching consumers with the Office of Foreign Asset Control's "terrorist alert" list based on first and last name alone. *See Ramirez v. Trans Union, LLC*, No. 12-CV-00632-JSC, 2017 WL 5153280, at *1 (N.D. Cal. Nov. 7, 2017), *aff'd in part, vacated in part, rev'd in part sub nom. Ramirez v. TransUnion, LLC*, 951 F.3d 1008 (9th Cir. 20020).

11.     Moreover, the Federal Trade Commission and Consumer Financial Protection Bureau have specifically warned consumer reporting agencies, including the CRA Defendants, to review their procedures when a mixed file occurs.

12.     Repeated noncompliance with their statutory duties establishes that, in this case, as detailed below, the CRA Defendants acted willfully.  *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 53 (2007) (punitive damages can be awarded based on "reckless disregard for a statutory duty"); *see also Dalton v. CAI*, 257 F.3d 409, 418 (4th Cir. 2001) *(*noting that whether "other consumers have lodged complaints similar to Dalton's against CAI" is relevant to willfulness under the FCRA and noting that "[e]vidence that a defendant has repeatedly engaged in prohibited conduct while knowing or suspecting that it was unlawful would provide relevant support for an argument that strong evidence is required to cure the defendant's disrespect for the law.").

13.     In this action, the CRA Defendants falsely reported to Plaintiff's potential creditors that Plaintiff owned Synchrony credit accounts that actually belonged to another consumer—Plaintiff's brother—in violation of 15 U.S.C. § 1681e(b). The CRA Defendants also failed to conduct reasonable reinvestigation(s) to determine whether information Plaintiff disputed was inaccurate and correct or delete the disputed information from Plaintiff's credit file, in violation of 15 U.S.C. § 1681i (requiring CRAs to conduct a "reasonable reinvestigation" of a disputed inaccuracy and correct or delete it within thirty days).

14.    The FCRA also requires furnishers of information ("Furnishers"), i.e., a creditor or other third party that sells information about consumers to a CRA, to conduct a reasonable investigation regarding the "completeness or accuracy of any [disputed] information."  15 U.S.C. § 1681s-2(b). Within the thirty-day period, the Furnisher must modify, delete, or permanently block any items of information found to be inaccurate, incomplete, or unverifiable. *Id.* In this action, Furnisher Synchrony Bank failed to reasonably investigate Plaintiff's disputes and review all relevant information provided by Plaintiff and/or the CRA Defendants, in violation of 15 U.S.C. § 1681s-2(b).

15.    Plaintiff seeks actual, statutory, and punitive damages, costs and attorney's fees from Defendants for their willful and/or negligent violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq*.

## PARTIES

16.    Plaintiff Kenneth Lamar West ("Plaintiff" or "Mr. West") is a natural person residing in Nashville, Georgia, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

17.    Defendant Equifax Information Services, LLC. ("Equifax") is a limited liability company with a principal place of business located at 1550 Peachtree Street, N.W., Atlanta, Georgia 30309, and is authorized to do business in the State of

Florida, including within this District. Equifax can e served at it's registered agent for service Corporation Service Company at 2 Sun Court, Suite 400 Peachtree Corners, Georgia 30092.

18.     Equifax is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). Equifax is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d) to third parties.

19.     Defendant Trans Union LLC ("Trans Union") is a limited liability company with a principal place of business located at 555 West Adams Street, Chicago, Illinois 60661, and is authorized to do business in the State of Florida, including within this District. Trans Union can be served at it's registered agent for service Illinois Corporation Service Company at 801 Adlai Stevenson Drive, Springfield, Illinois 62703.

20.     Trans Union is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). Trans Union is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d) to third parties.

21.     Defendant Synchrony Bank ("Synchrony") is a bank with a principal place of business located 170 W Election Rd, Ste 125, Draper, UT 84020 and is authorized to do business in the State of Georgia, including within this District.

22.     Synchrony is a "Furnisher" of consumer information, as defined in 12 C.F.R. § 1022.41(c).

## JURISDICTION AND VENUE

23.     This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

24.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## FACTUAL ALLEGATIONS

25.     Plaintiff Kenneth West has an excellent credit history.

26.     In October 2023, or sometime before then, Plaintiff's credit file was mixed with that of another consumer.

27.     That other consumer was Plaintiff's brother, Kent.

28.     Kent's social security number is different from Plaintiff Kenneth's social security number.

29.    Kent West and Kenneth West are different people.

30.    A number of Kent West's accounts were included on Kenneth West's reports with one or both CRA Defendants.

31.    These accounts, at some point in 2023, included a Verizon Wireless account that, upon information and belief, belonged to Kent West or Kent West's spouse.

*The Mixed Synchrony Bank Accounts*

32.    A number of Kent West's accounts with Synchrony Bank were included on Kenneth West's reports with the CRA Defendants.

33.    These accounts included SYNCB/BELK tradelines on Plaintiff's Equifax and Trans Union reports that belonged to Kent West, not Kenneth West.[2]

34.    The false, mixed accounts included a SYNCB/AMAZON tradeline on Plaintiff's Equifax report.

---

[2] There was a SYNCB/BELK DUAL CARD tradeline on Plaintiff's Equifax and Trans Union reports that Plaintiff initially believed may have belonged to Kent West, not Kenneth West. Defendants' reporting was confusing to Plaintiff, due to its being mixed with his brother. Plaintiff's dispute letter made clear that one (and only one) of the reported Synchrony Bank cards could have belonged to Plaintiff, because Plaintiff did have one Synchrony Bank card, with an account number that, upon information and belief, ended "in *9288." After further review, Plaintiff discovered that the SYNCB/BELK DUAL CARD on his reports may have been the Synchrony Bank account that actually belonged to him, even though Plaintiff had previously asked Synchrony Bank to "review[]" it. However, the other Synchrony Bank accounts did not belong to Plaintiff.

35.    The SYNCB/AMAZON tradeline was highly derogatory, marked as at 120 days late or worse.

36.    Upon information and belief, those accounts were not associated with Plaintiff's social security number.

37.    Upon information and belief, those accounts were associated with Kent West's social security number.

*Plaintiff's Disputes*

38.    Plaintiff disputed these inaccurate Synchrony Bank accounts.

39.    Around September 2024, Plaintiff sent letters to Equifax and Trans Union.

40.    The letters attached copies of Plaintiff's Driver's License and his social security card.

41.    The also attached images of the SYNCB/AMAZON card at issue, which bore Kent West's name, not Plaintiff Kenneth's.

42.    These letters explained that "My brother and I have similar names— my name is Kenneth, and he is Kent."

43.    These letters further explained that he and Kent have "the same date of birth since we are twins."

44.     These letters made clear that Plaintiff Kenneth "did not open, nor did I benefit from any of the above-listed accounts."

*Defendants' Inadequate Responses to Plaintiff's Disputes*

45.     Plaintiff received no response from Equifax from the dispute, even though it was delivered on September 20, 2024.

46.     As of November 2024, mixed Synchrony Bank tradelines were still reporting on Plaintiff's Equifax report.

47.     Upon information and belief, Equifax failed to conduct reasonable reinvestigations of Plaintiff's disputes.

48.     Upon information and belief, Equifax failed to adequately review all of the information provided to it by Plaintiff in support of Plaintiff's dispute(s), including but not limited to the information and attachments listed above.

49.     Trans Union replied to Plaintiff's dispute letter on or about October 11, 2024.

50.     Trans Union stated that the disputed Synchrony Bank accounts had been verified as accurate.

51.     Upon information and belief, Trans Union failed to conduct reasonable reinvestigations of Plaintiff's disputes.

52.     Upon information and belief, Trans Union failed to adequately review all of the information provided to it by Plaintiff in support of Plaintiff's dispute(s), including but not limited to the information and attachments listed above.

53.     Upon information and belief, Synchrony Bank received a number of automated consumer dispute verification ("ACDV") forms from one or both of the CRA Defendants as a result of Plaintiff's disputes.

54.     Upon information and belief, Synchrony Bank "verified" in response to some or all of the ACDVs it received in connection with Plaintiff's disputes.

55.     Upon information and belief, Synchrony Bank failed to conduct reasonable investigations with respect to the information disputed by Plaintiff.

56.     Upon information and belief, Synchrony Bank failed to review all relevant information provided by Plaintiff, Equifax, and Trans Union regarding Plaintiff's disputes, as detailed above.

*Unauthorized Disclosures*

57.     Upon information and belief, because the CRA Defendants continue to mix Plaintiff's credit file with that of the other consumer, the CRA Defendants continue to sell Plaintiff's credit file in response to applications and inquiries pertaining to the unrelated consumer.

58.    Plaintiff noticed a number of inquiries on his reports with the CRA Defendants that he does not recognize, including a September 13, 2024 inquiry with BLUE FCU on his Trans Union report and an inquiry with TKO Perimeter LLC from June 15, 2024 on his Equifax report.

*Damages*

59.    On or about June 2024, Plaintiff applied for auto financing at two dealerships.

60.    Plaintiff was denied by a number of auto lenders who accessed Plaintiff's reports with one or both of the CRA Defendants.

61.    Plaintiff suffered denials from lenders who accessed Plaintiff's Trans Union report. Those lenders included, upon information and belief, Truist Auto, TD Auto Finance, Fifth Third Bank, and VyStar Credit Union.

62.    Plaintiff also suffered denials from lenders who accessed Plaintiff's Equifax report. Those lenders included Fifth Third Bank.

63.    Plaintiff ultimately was not able to purchase the initial vehicle he wanted at the first dealership, Valdosta Nissan (who had also accessed his erroneous Trans Union report).

64.    At all times pertinent hereto, each Defendant was acting by and through its agents, servants, and/or employees who were acting within the course and scope

of their agency or employment, and under the direct supervision and control of the Defendants herein.

65.    At all times pertinent hereto, each Defendant's conduct, as well as that of its respective agents, servants, and/or employees, was intentional, willful, reckless, grossly negligent and in utter disregard for federal law and the rights of Plaintiff herein.

66.    As a standard practice, the CRA Defendants do not conduct independent investigations in response to consumer disputes. Instead, they merely parrot the response of the credit furnisher, despite numerous court decisions admonishing this practice. *See Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997) (The 'grave responsibilit[y]' imposed by § 1681(a) must consist of something more than merely parroting information received from other sources. Therefore, a 'reinvestigation' that merely shifts the burden back to the consumer and the credit grantor cannot fulfill the obligations contemplated by the statute."); *Apodaca v. Discover Fin. Servs.*, 417 F. Supp. 2d 1220, 1230-31 (D.N.M. 2006) (noting that credit reporting agencies may not rely on automated procedures that make only superficial inquiries once the consumer has notified it that information is disputed); *Gorman v. Experian Info. Sols., Inc.*, 2008 WL 4934047, at *6 (S.D.N.Y. Nov. 19, 2008).

67.    Defendants are aware of the shortcomings of their respective procedures and intentionally choose not to comply with the FCRA to lower their costs.  Accordingly, Defendants' violations of the FCRA are willful.

68.    As a result of each Defendant's conduct, action, and inaction, Plaintiff suffered damages including but not limited to, the loss of his right to keep his private financial information confidential; the loss of his right to information about who was viewing his private financial information and how his private financial information was improperly implicated in the credit applications of another; damage by loss of credit; loss of ability to purchase and benefit from his good credit rating; detriment to his credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials and having another consumer's personally identifying information and credit information, including inquiries, mixed into Plaintiff's credit file.

**CLAIMS FOR RELIEF**
**COUNT I**
**15 U.S.C. § 1681e(b)**
**Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy**
**(First Claim for Relief Against the CRA Defendants)**

69.     Plaintiff re-alleges and incorporates by reference the allegations set forth in preceding paragraphs as if fully stated herein.

70.     The FCRA imposes a duty on consumer reporting agencies to devise and implement procedures to ensure the "maximum possible accuracy" of consumer reports, as follows:

> Whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure ***maximum possible accuracy*** of the information concerning the individual about whom the report relates.

15 U.S.C. §1681e(b) (emphasis added).

71.     On at least one occasion, each CRA Defendant prepared false consumer reports concerning Plaintiff.

72.     Each CRA Defendant mixed another consumer's personal and credit account information into Plaintiff's credit file, thereby misrepresenting Plaintiff, and ultimately, Plaintiff's creditworthiness.

73.     Each CRA Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy

in the preparation of the credit reports and credit files it published and maintained concerning Plaintiff.

74.    As a result of each CRA Defendant's separate and independent violations, Plaintiff suffered damages including but not limited to, the loss of his right to keep his private financial information confidential; the loss of his right to information about who was viewing his private financial information and how his private financial information was improperly implicated in the credit applications of another; damage by loss of credit; loss of ability to purchase and benefit from his good credit rating; detriment to his credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials and having another consumer's personally identifying information and credit information, including inquiries, mixed into Plaintiff's credit file.

75.    Each CRA Defendant's violations were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  Alternatively, each CRA Defendant was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

76.     Plaintiff is entitled to recover attorneys' fees and costs from each CRA Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**COUNT II**
**15 U.S.C. § 1681i**
**Failure to Perform a Reasonable Reinvestigation**
**(Second Claim for Relief Against the CRA Defendants)**

77.     Plaintiff re-alleges and incorporates by reference the allegations set forth in preceding paragraphs as if fully stated herein.

78.     The FCRA mandates that each CRA Defendant conduct a reasonable reinvestigation of the accuracy of information "[i]f the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer. *See* 15 U.S.C. § 1681i(a)(1).   The FCRA imposes a 30-day time limit for the completion of such an investigation. *Id*.

79.     The FCRA provides that if each CRA Defendant conducts its reinvestigation of disputed information and confirms that the information is, in fact, inaccurate or it is unable to otherwise verify the accuracy of the disputed information, it is required to delete the item of information from the consumer's file. *See* 15 U.S.C. § 1681i(a)(5)(A).

80.    Plaintiff initiated a dispute with each CRA Defendant and disputed inaccurate information reporting in his credit file and requested that each CRA Defendant correct and/or delete the inaccurate, misleading, and highly damaging information belonging to an unrelated consumer.

81.    Each CRA Defendant conducted virtually no investigation of Plaintiff's dispute, or such investigation was so poor as to allow patently false and highly damaging information to remain in Plaintiff's credit file.

82.    Plaintiff expended resources in the form of time, money, and effort to dispute the inaccurate information with each CRA Defendant, to no avail.

83.    Each CRA Defendant violated 15 U.S.C. § 1681i by failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate and record the current status of the disputed information, or delete the disputed information, before the end of the 30-day period beginning on the date on which it received notice of Plaintiff's dispute; and by failing to maintain reasonable procedures with which to filter and verify information in Plaintiff's credit files.

84.    As a result of each CRA Defendant's conduct, action, and inaction, Plaintiff suffered damages including but not limited to, the loss of right to keep his private financial information confidential; the loss of his right to information about who was viewing his private financial information and how his private financial

information was improperly implicated in the credit applications of another; damage by loss of credit; loss of ability to purchase and benefit from his good credit rating; detriment to his credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials and having another consumer's personally identifying information and credit information, including inquiries, mixed into Plaintiff's credit file.

85.     Each CRA Defendant's violations were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  Alternatively, each CRA Defendant was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

86.     Plaintiff is entitled to recover attorneys' fees and costs from each CRA Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## COUNT III
## 15 U.S.C. § 1681b(a)
### Furnishing a Credit Report Without a Permissible Purpose
### (Third Claim for Relief Against the CRA Defendants)

87.    Plaintiff re-alleges and incorporates by reference the allegations set forth in preceding paragraphs as if fully stated herein.

88.    This action involves the willful, knowing, and/or negligent violation of the FCRA relating to the dissemination of consumer credit and other financial information.

89.    The FCRA prohibits any consumer reporting agency from furnishing a consumer report unless it has a permissible purpose enumerated under the FCRA, 15 U.S.C. § 1681b(a).

90.    On multiple occasions, each CRA Defendant furnished Plaintiff's credit report to various entities without a permissible purpose in response to credit applications of another, which did not involve Plaintiff, and which each CRA Defendant therefore had no reason to believe that those various credit-issuing entities intended to use Plaintiff's credit information in connection with a credit transaction involving Plaintiff, in violation of 15 U.S.C. § 1681b(a).

91.    Each CRA Defendant violated 15 U.S.C. § 1681b(a) by selling Plaintiff's credit report to third parties, whom did not have a permissible purpose to Plaintiff's credit report, in relation to the credit application of an unrelated consumer.

92.     As a result of each CRA Defendant's conduct, action, and inaction, Plaintiff suffered damages including but not limited to, the loss of his right to keep his private financial information confidential; the loss of his right to information about who was viewing his private financial information and how his private financial information was improperly implicated in the credit applications of another; damage by loss of credit; loss of ability to purchase and benefit from his good credit rating; detriment to his credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials and having another consumer's personally identifying information and credit information, including inquiries, mixed into Plaintiff's credit file.

93.     Each CRA Defendant's conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, Each CRA Defendant was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

94.    Plaintiff is entitled to recover attorneys' fees and costs from each CRA Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## COUNT IV
## 15 U.S.C. § 1681s-2b
## Failure to Investigate Consumer's Dispute and Review All Relevant Information Provided by the Consumer
## (Only Claim for Relief Against Defendant Synchrony Bank)

95.    Plaintiff re-alleges and incorporates by reference the allegations set forth in preceding paragraphs as if fully stated herein.

96.    Defendant Synchrony Bank refused to remove information that belonged to another consumer – namely numerous Synchrony Bank credit accounts including a derogatory Synchrony Bank / Amazon account.

97.    Defendant Synchrony Bank violated 15 U.S.C. § 1681s-2(b) by failing to investigate Plaintiff's disputes, or otherwise by failing to fully and properly investigate Plaintiff's disputes, including but not limited to failing to review all relevant information regarding the same; by failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the inaccurate information relating to Plaintiff to the national credit bureaus, including but not necessarily limited to the CRA Defendants; and, by failing to cease furnishing inaccurate information relating to Plaintiff to the national credit bureaus, including but not limited to the CRA Defendants.

98.     As a result of Synchrony Bank's violations, Plaintiff suffered damages including but not limited to, loss of credit; loss of ability to purchase and benefit from his good credit rating; detriment to his credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials and having another consumer's personally identifying information and credit information, including inquiries, mixed into Plaintiff's credit file.

99.     Defendant Synchrony Bank's violations were willful, rendering it liable for actual or statutory damages and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  Alternatively, Synchrony Bank was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

100.    Plaintiff is entitled to recover attorneys' fees and costs from Synchrony Bank in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the following relief:

i.    Determining that each Defendant negligently and/or willfully violated the FCRA;

ii.    Awarding Plaintiff actual, statutory, and punitive damages as provided by the FCRA;

iii.    Awarding Plaintiff reasonable attorneys' fees and costs as provided by the FCRA;

iv.    Ordering each CRA Defendant to:

    a.    immediately and permanently (i) delete all inaccurate information from Plaintiff's credit reports and files, and (ii) cease reporting the inaccurate information to any and all persons and entities to whom the CRA Defendants reported consumer credit information; and

    b.    send updated and corrected credit report information to all persons and entities to whom the CRA Defendants reported inaccurate information about Plaintiff within the last three years; and

v.    Granting further relief, in law or equity, as this Court may deem appropriate and just.

**DEMAND FOR JURY TRIAL**

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

RESPECTFULLY SUBMITTED,

Dated: December 30, 2024

By: */s/Misty Oaks Paxton*
Misty Oaks Paxton, Esq.
THE OAKS FIRM
3895 Brookgreen Pt.
Decatur, GA 30034
Tel: (404) 500-7861
Email: attyoaks@yahoo.com


*Attorneys for Plaintiff*
*Kenneth Lamar West*